Walker G. GRANT, Appellant,

v.

Richard S. SCHWEIKER, Secretary Department of Health and Human Services, Appellee.

No. 82–1303.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 8, 1982.

Decided Feb. 1, 1983.

Dennis W. Carroll, Jr., Administrative Law Center, Legal Aid Bureau, Inc., Baltimore, Md., for appellant.

Joseph Friedman, Baltimore, Md. (J. Frederick Motz, U.S. Atty., Glenda Gordon, Asst. U.S. Atty., Gabriel L. Imperato, Dept. of Health and Human Services, Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, CHAPMAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Walker Grant appeals from an order of the district court affirming the Secretary's denial of his claim for disability insurance benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* Specifically, Grant contends that the Secretary erred in mechanically applying the "grid regulations," which directed a finding of nondisability, despite evidence indicating the presence of nonexertional, as well as exertional, impairments. We agree. We vacate the judgment of the district court and remand the case with instructions to return it to the Secretary for further proceedings.

I.

Grant applied for disability insurance benefits in March, 1980. His claim was denied, and after reconsideration again denied, by the Social Security Administration. He then requested a hearing before an administrative law judge (ALJ), which was held in November, 1980.

The evidence at the hearing disclosed that Grant was a thirty-five year-old man who had obtained a high school equivalency degree while in the military. His work history consisted of unskilled, heavy laborer work, including loading trucks and pick and shovel work. The first records of Grant's problems were hospital records from the spring of 1974, when Grant was admitted with preliminary diagnoses of intracranial brain lesion and diabetes mellitus. Against doctors' advice, however, Grant left the hospital before further testing could be done. The evidence indicates that subsequent to that time, Grant had not worked more than a few days at a time.

Grant submitted evidence at the hearing in an effort to demonstrate that he had suffered a cerebral vascular accident which had resulted in a permanent weakness in his left side ("hemiparesis"). Several medical evaluations concluded that Grant indeed did suffer from weakness on his left side, which is his nondominate side. One doctor estimated this to be about a 10–20 percent loss of strength, although he also indicated that Grant was exaggerating his weakness. Because of this evidence, the ALJ found that Grant was no longer able to perform his prior heavy work activities as a laborer.

On the basis of other evidence presented, however, the ALJ ruled that Grant retained the ability to perform sedentary work activity. Medical reports indicated that muscle bulk was normal and neurological examinations were essentially normal. The evidence indicated that Grant could dress, go

shopping, and cook for himself, that his pain was relieved by medication, and that he could sit comfortably for extended periods without distress. Moreover, the ALJ noted that Grant had exaggerated his weakness and had failed to meet his responsibilities in his rehabilitation program. The ALJ thus found that Grant was able to perform sedentary work activity.

In addition to evidence as to his left side hemiparesis, however, Grant had also tendered evidence indicating that he suffered from low intelligence and from greatly impaired manual dexterity. The report from the vocational evaluator stated that Grant had scored an IQ of 72 on the Revised Beta Examination, placing him in the inferior range of intelligence. The Culture Fair Intelligence Test indicated an IQ below available norms. On the Wechsler Adult Intelligence Scale IQ test, Grant had scored a verbal IQ of 89, a performance IQ of 74, and a full scale IQ of 82, indicating a "borderline retarded to dull normal level," according to the neurologist. The General Aptitude Test Battery gave contrary results, showing average intelligence, verbal aptitude, and numerical aptitude. Additionally, one report indicated that Grant had scored a 6.9 arithmetic grade level, a 7.5 vocabulary grade level, and a 6.5 paragraph comprehension level. The ALJ's only reference to Grant's intelligence was his statement that Grant had scored an 82 on the Wechsler test.

The vocational evaluator's report also indicated that Grant had gotten a "low score" on the Bennett Hand Tool Dexterity Test, and had scored in the low range on the Purdue Pegboard test of manipulative dexterity. In addition, the General Aptitude Test Battery indicated that finger dexterity and manual dexterity were at least one and one-half standard deviation units below the mean, offering no positive vocational significance. Yet the ALJ made no reference, let alone findings, as to possible impaired manual dexterity.

Instead, the ALJ took what he considered to be the four relevant findings—that Grant was thirty-five-years old, was a high school graduate, had prior work experience that was unskilled, and was presently able to perform sedentary work—and applied the "grid regulations," Appendix 2, Table No. 1, to 20 C.F.R. Part 404, subpart P. He found that those four findings put Grant within Rule 201.27 of that grid, which directs a finding of "Not disabled." The ALJ held that because in his opinion the criteria of the Rule were met exactly by the evidence of record, the grid's conclusion of not disabled had to be observed, and thus denied Grant's application in its entirety.

This decision was affirmed by the district court, which ruled that the ALJ's decision was supported by substantial evidence. The district court also noted that even if the high school equivalency degree that Grant earned while in the military was discounted, the grid would still direct a finding of "Not disabled" under Rule 201.24.

## II.

In *Hall v. Harris,* 658 F.2d 260 (4 Cir. 1981), this court reviewed at some length the legal framework for deciding disability benefits claims under the new Social Security Administration regulations. Under the Act, the claimant bears the burden of proving a disability within the definition of the Act. 42 U.S.C. § 423(d)(5). Once the claimant makes a prima facie showing of a disability that prevents his engaging in his prior work activity, the burden of going forward shifts to the Secretary, who must show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy. *Id.* § 423(d)(2)(A); *see Taylor v. Weinberger,* 512 F.2d 664, 666 (4 Cir.1975).

The new regulations attempt to regularize the Secretary's decisionmaking as to this latter showing. They establish a sequential evaluation process whose fifth inquiry is whether the claimant is able to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(f). In order to answer this question, the regulations establish "grids" that take administrative notice of the availability of job types in the na-

tional economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity. Each grid table, however, only considers the strength or "exertional" component of the claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his disability. For that reason, the regulations themselves specifically provide that where the claimant's impairment is nonexertional—not manifested by a loss of strength or other physical abilities—or is marked by a combination of exertional and nonexertional impairments, the grids' Rules are not conclusive, and full individualized consideration must be given to all relevant facts of the case. *Id.* Part 404, subpart P, Appendix 2, § 200.00(a), (d)–(e); 20 C.F.R. § 404.1569. In particular, the regulations note that individualized consideration must be given when nonexertional impairments further narrow the range of jobs available to the claimant, considering his exertional impairments. *Id.* Part 404, subpart P, Appendix 2, § 200.00(d)(2).

### III.

In the present case, the ALJ found that Grant suffered from a disability (hemiparesis) which, although not so severe as to justify a finding of disability without regard to vocational evidence, did prevent him from performing his prior work activity as a heavy laborer. The burden thus shifted to the Secretary to come forward with evidence that Grant retained the ability to perform work of a type that exists in the national economy. The Secretary decided here to rely solely upon the grids as administrative notice that such jobs existed, and the ALJ so found.

 We think it plain, however, that the ALJ violated the regulations' own terms by conclusively applying the grid's Rules in the face of substantial evidence that Grant's exertional impairment (hemiparesis) was coupled with two nonexertional impairments (low intelligence and impaired dexterity). Although considerable evidence as to these nonexertional impair-

ments was presented at the hearing, the ALJ made no specific findings as to whether or not they indeed exist. The ALJ's sole finding was that Grant had an IQ of 82 as shown by the Wechsler test, and even this finding is erroneous as a matter of law, in that the regulations provide that the lowest of the three Wechsler scores is to be employed. 20 C.F.R. Part 404, subpart P, Appendix 1, § 12.00(B)(4). As noted above, the regulations provide that the grids may not be conclusively applied where nonexertional impairments exist in tandem with exertional limitations; instead individualized consideration must be given. Because Grant came forward with substantial evidence tending to show the presence of nonexertional impairments, we hold that it was error for the ALJ not to make findings as to the existence of those impairments and instead simply to apply conclusively the grid's Rules. Therefore, we must vacate the judgment of the district court with directions to remand the case to the Secretary for further proceedings, at which the Secretary is to determine whether Grant suffers nonexertional impairments in addition to his exertional impairment.

 Manifestly, if Grant demonstrates the presence of nonexertional impairments, the Secretary, in order to prevail, must be required to prove by expert vocational testimony that, despite Grant's combination of nonexertional and exertional impairments, specific jobs exist in the national economy which he can perform. The grids may satisfy the Secretary's burden of coming forward with evidence as to the availability of jobs the claimant can perform only where the claimant suffers solely from exertional impairments. To the extent that nonexertional impairments further limit the range of jobs available to the claimant, the grids may not be relied upon to demonstrate the availability of alternative work activities. Instead, in such cases the Secretary must produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy. *See Taylor v. Weinberger,* 512 F.2d 664 (4 Cir.1975) (requiring expert vocational testimony).

We vacate the judgment of the district court and remand the case to it with instructions to remand it to the Secretary for further proceedings in accordance with this opinion.

VACATED AND REMANDED.