## James E. KEENEY

v.

## Margaret M. HECKLER,[1] Secretary, Department of Health and Human Services.

### Civ. A. No. M–81–2651.

United States District Court,
D. Maryland.

Aug. 10, 1983.

William M. Manko, Reisterstown, Md., for plaintiff.

J. Frederick Motz, U.S. Atty. for Maryland, and Glenda G. Gordon, Asst. U.S. Atty., Baltimore, Md., for defendant.

### MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiff brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Secretary of Health and Human Services (HHS) denying his claim for disability insurance benefits. This case is presently before the court on a Motion for Summary Judgment filed by the defendant.[2]

The plaintiff filed an application for a period of disability and for disability insurance benefits on April 24, 1980, contending that he had become unable to work in October of 1979. (Tr. 72–75).[3] The plaintiff's application was denied initially (Tr. 76–77), and on reconsideration. (Tr. 79–80). The plaintiff requested and received a hearing before an Administrative Law Judge (ALJ) on February 12, 1981. (Tr. 82). After the hearing, at which the plaintiff testified and

---

1. Margaret M. Heckler succeeded to the office of Secretary on March 9, 1983, and has been substituted as the defendant. Rule 25(d)(1), Fed.R.Civ.P.

2. Paper No. 6. *See* Plaintiff's Opposition, Paper No. 8.

3. Administrative Record, Paper No. 5.

was represented by counsel, the ALJ rendered a decision finding that the plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 6–15). The ALJ's decision became the final decision of the Secretary of HHS when the Appeals Council approved the decision on August 11, 1981. (Tr. 3).

I. *Summary of the Evidence*

The plaintiff was born on April 8, 1924 (Tr. 33), and has a high school education (Tr. 33–34). The plaintiff had been employed as a private detective from 1966 to 1979. (Tr. 40). As a private detective, the plaintiff initially worked for an investigation organization, but, in 1970, the plaintiff became self-employed. (Tr. 40). Prior to working as a private investigator, the plaintiff, from 1961 to 1966, owned two taxi cabs, operating one himself and renting the other. (Tr. 39–40). From 1952 to 1961 the plaintiff was a Baltimore City policeman. The plaintiff also served time in the United States Army. (Tr. 36).

His job as a private investigator involved "figuring things out." (Tr. 91). The plaintiff investigated domestic, missing persons, insurance, and workmen's compensation cases, and filed written reports. The job required driving long distances, taking photographs, and talking to witnesses. (Tr. 91–94). The plaintiff continued working until his contract to provide security at Friendship Airport, now BWI, was not renewed in October, 1979.

In October, November, and December of 1979, the plaintiff was seen by Dr. Polson at the Washington Heights Medical Center. (Tr. 120–125). The plaintiff's problems were listed as depression, difficulty sleeping, continuing difficulties with his feet resulting from exposure to cold in WWII, hay fever, high frequency hearing loss, excessive alcohol intake, and borderline high blood pressure. (Tr. 121). Liver function tests were conducted with bilirubin of 2.2 and albrimin of 4.1 (Tr. 125). Depression and hepatomegaly, enlargement of the liver, were diagnosed. Medication for depression was prescribed (Tr. 123, 45).

On December 25, 1979, the plaintiff was admitted to Baltimore County General Hospital because he was repeatedly vomiting blood. According to the attending physician's report, Dr. Pearlman, within the first day of hospitalization the plaintiff "became tremulous, confused, and slipped into [a] hepatic coma." (Tr. 105). The plaintiff was placed in intensive care where he regained consciousness and was later discharged.

During his stay at the hospital the plaintiff, who also complained of pains in his feet, was the subject of an electromyography and nerve conduction studies for his lower extremities. The examining physician, Dr. Spindler, noted that the plaintiff was "an alert white male in no acute distress." The nerve conduction studies produced values within normal limits and the assessment by Dr. Spindler was that there existed a mild sensory polyneuropathy with no nerve conduction abnormalities. (Tr. 107–08). X-rays taken during the hospital stay revealed a normal chest, ribs, and abdomen (Tr. 113–17), and a barium enema disclosed diverticulosis of the sigmoid colon (Tr. 118). A liver and spleen scan revealed findings consistent with cirrhosis of the liver and splenomegaly. (Tr. 119). Dr. Pearlman diagnosed the plaintiff as suffering from upper GI bleeding, probably secondary to gastritis, and hepatic coma, secondary to alcoholic liver disease. (Tr. 105). The plaintiff was not prescribed any medicine upon his recovery and discharge from the hospital (Tr. 49).

The medical report of Dr. M. Peska, who saw the plaintiff from December 1979 to April, 1980, contains a diagnosis of hepatitis and GI bleeding. Dr. Peska stated that the neuropathy noted at the hospital still persisted and that the plaintiff had demonstrated abnormal function tests with bilirubin of 3.2 and albrimin of 3.1 on April 14, 1980. (Tr. 125–28).

Laboratory reports from Sherman Laboratories, Inc. on September 15, 1980, state that the plaintiff's bilirubin measurements from the liver functions tests conducted were 1.5 mg./dl. (Tr. 131).

In an evaluation of the claimant on January 29, 1981, Dr. Pearlman noted that the plaintiff could sit for two hours, but could not stand or walk for an hour or more. The plaintiff could in his opinion, lift and carry up to ten pounds, but could not bend, squat, crawl, climb, or reach above his shoulder level. Moreover, Dr. Pearlman, opined that the plaintiff's activities should be restricted from unprotected heights, being around machinery, exposure to marked changes in temperature and humidity, driving, and exposure to dust, fumes and gases. (Tr. 136).

On February 26, 1981, Dr. Daniel Arnheim conducted a psychological consultation with the plaintiff. In his report Dr. Arnheim noted that the plaintiff appeared to be experiencing overt depression and mild anxiety with an underlying anger resulting from his loss of productivity. On the WAIS test the claimant obtained a verbal IQ of 107, a performance IQ of 106, and a full scale IQ of 107 within the average range of intellectual ability. Although there were no clear signs of focal organic disfunction, Dr. Arnheim noted that the plaintiff had indications of general impairment such that it was unlikely that he could adequately perform the requirements of his former job as a private investigator. A manual job was possible in Dr. Arnheim's opinion, provided the job did not require a high level of verbal or intellectual skills. (Tr. 138–40). A supplemental questionnaire answered by Dr. Arnheim indicated his conclusions that the plaintiff evidenced a mild restriction of daily activities and ability to relate to other people, no deterioration in personal habits appeared, but a moderate degree of constriction of interests was present. (Tr. 141–42). Dr. Arnheim indicated that the plaintiff had mild limitations on his ability to understand, carry out and remember instructions, and on his ability to respond to customary work pressures. He stated that plaintiff would have moderate limitations on his ability to perform complex or varied tasks. (Tr. 141–42).

On April 6, 1981, the plaintiff was seen by a psychiatrist, Dr. Acle, (Tr. 143–48), who, after interviewing the plaintiff, formed a diagnostic impression of nonpsychotic reactive depression. Dr. Acle indicated on the supplemental questionnaire that he thought the plaintiff demonstrated a mild restriction of his daily activities and of his ability to relate to other people, as well as a deterioration in his personal habits and interests. Dr. Acle indicated that the plaintiff would have mild difficulty performing simple repetitive or varied tasks, and moderate difficulty performing complex tasks. (Tr. 148).

The plaintiff testified at the hearing on February 21, 1981, before the ALJ, that the longest he could stay seated was an hour and a half. He further testified that he could walk five blocks and lift 20 pounds and that he climbed stairs in his home maybe twice a day assisted by the bannister. (Tr. 50–51). He stated he could not bend, stoop, or touch his toes. The plaintiff rises at about 7:00 or 7:30 each day, sometimes makes breakfast, dresses and bathes himself, and spends 5 or 6 hours a day watching television. (Tr. 55–56). He goes out to the VFW lodge about twice a week for 3 or 4 hours and there he plays cards or watches television. He usually retires about 11:00 or 12:00 at night. (Tr. 56–57). The plaintiff testified that he had trouble hearing (Tr. 60–61), had leg problems (Tr. 42, 49), and drank three draft beers a day (Tr. 68–69), but denied being an alcoholic (Tr. 47). While he would like to continue working, he "can't get it all together." (Tr. 67). The plaintiff is currently only taking medication to prevent weight gain. (Tr. 44).

The ALJ, after reviewing the medical evidence and the testimony of the plaintiff, noted that the claimant had a history of digestive difficulties, foot problems, and alcohol abuse with reactive depression. After correctly noting that the impairments suffered by the plaintiff were not so severe so as to require a finding of disability under appendix 1, see 20 C.F.R., pt. 404, subpt. P, app. 1 §§ 5.00, 11.01, & 12.00, the ALJ concluded that the claimant could engage in the full range of sedentary work. He then applied the grids, Rule 201.17, which assumes the following factors: advanced age,

high school education or more, previous skilled or semi-skilled work experience from which the skills are transferable, and an ability to perform sedentary work. The grid directed a finding of not disabled for this combination of factors. The ALJ, applying the grid, held the claimant was not disabled and not entitled to benefits. (Tr. 6–15).

## II. *Discussion*

The issue before this court is whether the Secretary's decision to deny disability insurance benefits is supported by substantial evidence. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). If the Secretary's finding is supported by substantial evidence, then this court must accept those findings. *Lester v. Schweiker,* 683 F.2d 838, 841 (4th Cir.1982). When making this determination, the court must closely scrutinize the entire record, *Kesling v. Secretary of Health & Human Services,* 491 F.Supp. 569, 572 (N.D.W.Va. 1980), to ensure that the correct legal standards have been applied, *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir.1980), and the conclusions are based on adequate evidence. *Smith v. Califano,* 592 F.2d 1235, 1236 (4th Cir.1979). The Secretary must "explicitly" indicate that all relevant evidence has been weighed and its weight. *Stawls v. Califano,* 596 F.2d 1209, 1213 (4th Cir.1979). An ALJ is required to inquire fully into each issue and is held to a high standard in his discharge of the fact finding requirement. *See, e.g., Thomas v. Schweiker,* 688 F.2d 835 (4th Cir., 1982); *Marsh v. Harris,* 632 F.2d 296, 299 (4th Cir.1980).

In 1978, the Secretary of HHS promulgated regulations implementing the Social Security Act's definition of "disability." *See* 43 Fed.Reg. 55349 (1978) (codified, as amended, at 20 C.F.R. pt. 404, subpt. P (1982)). These regulations recognize that some impairments are so severe they prevent a person from pursuing any gainful employment. 20 C.F.R. pt. 404, subpt. P, app. 1 (identifying those impairments). Where a claimant establishes that he suffers from one of the impairments listed in appendix 1, he will be considered disabled without further inquiry. Where the claimant suffers a less severe impairment, the Secretary must determine whether he can pursue his former work or perform less demanding work. *See* 20 C.F.R. § 404.-1520(e) & (f)(1). If he can, the claimant is determined by the ALJ to be not disabled.

It is well-settled in this Circuit that the claimant bears the initial burden of establishing the existence of a medically determinable physical or mental impairment, and that the impairment renders the claimant incapable of engaging in his usual line of work. 42 U.S.C. § 423(d)(1)(A). *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir.1981). *See, e.g., Walker v. Harris,* 642 F.2d 712, 714 (4th Cir.1981); *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972). If such a showing is made, the Secretary must then show, "(1) that the claimant, considering his age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that his specific type of job exists in the national economy." *Hall,* 658 F.2d at 264 (citations omitted). 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f), §§ 404.1566–1569.

In 1979, the Secretary established through rulemaking the grids, matrices of the four factors to be weighed by the ALJ to determine whether a claimant was disabled: physical ability, age, education, and work experience. These grids identify for certain combinations of the four factors, whether jobs exist in significant numbers in the national economy. These guidelines or grids, simplifying the Secretary's inquiry and recently approved by the Supreme Court, *Heckler v. Campbell,* —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), direct a conclusion whether the claimant is disabled or not disabled within the meaning of the Social Security Act. *See also Frady v. Harris,* 646 F.2d 143, 145 (4th Cir.1981).

While the use of the grids has been approved, the Supreme Court and this Circuit have been careful to note the circumstances in which the grids may be applied. *See Campbell,* 103 S.Ct. 1952, n. 5 & n. 11; *Grant v. Schweiker,* 699 F.2d 189 (4th Cir.

1983). *See also Gory v. Schweiker,* 712 F.2d 929, No. 82–1218 (4th Cir., July 21, 1983). In *Grant,* 699 F.2d at 192, the Fourth Circuit recognized that the regulations themselves specifically provide that where a claimant's impairments are, in whole or in part, nonexertional, the grids and the rules contained therein are not conclusive. In such a situation, full individualized consideration must be given to the relevant facts of the case. 20 C.F.R. pt. 404, subpt. P, App. 2 § 200.00(a), (d), (e); 20 C.F.R. § 404.1569. Individualized attention is particularly important when the nonexertional impairments narrow the range of jobs which the claimant can perform. 20 C.F.R. 404 subpt. P, App. 2 § 200.00(d)(2). In such a case, the Secretary must produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy. *Grant,* 699 F.2d at 192. In *Grant,* where the claimant presented evidence of two nonexertional impairments, low intelligence and impaired dexterity, and the ALJ relied solely on the grids and found the claimant not disabled, the Fourth Circuit vacated and remanded the case for reconsideration of the impairments from which the claimant suffered and to permit the Secretary to produce a vocational expert to testify about specific jobs in the national economy which this particular claimant could perform.

In the case *sub judice,* the ALJ found that the plaintiff suffered from a mild exertional impairment, neuropathy, and a nonexertional impairment, nervous disorder with a history of alcoholism. (Tr. 13). While the ALJ determined that the nonexertional impairment of the plaintiff was not so severe as to preclude any work activity in accordance with appendix 1, the ALJ failed to examine the relevant facts and to determine how the nonexertional impairment would limit the claimant's ability to do other types of work. The ALJ's conclusion that the plaintiff could perform sedentary work does not account for nonexertional impairments because the definition of sedentary work considers only physical requirements. 20 C.F.R. § 404.1567(a). Con-

sequently, the ALJ's reliance on the grid, which also is based on the determination that the plaintiff can perform all types of sedentary work, does not take into account the plaintiff's nonexertional impairment. *Grant,* 699 F.2d 189. The evidence submitted reveals that the plaintiff would have difficulty performing complex or varied tasks. (Tr. 140–148). Since it is likely that many jobs considered sedentary involve complex skills, a good memory, or verbal and intellectual ability which the evidence suggests the claimant cannot provide, the ALJ, in addition to examining the limitations imposed by the plaintiff's nonexertional impairment, must also, by vocational expert testimony, determine that there are jobs in the national economy that are available and that this particular plaintiff can perform.

Finally, the court also notes that one type of impairment, alleged by the claimant, hearing loss, was not reviewed by the ALJ in his findings. On remand the ALJ is directed to incorporate his conclusions regarding this alleged impairment into his findings.

Accordingly, for the reasons set forth in the body of the Memorandum and Order, it is this 10th day of August, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That the Motion for Summary Judgment filed by the defendant be, and the same is hereby, DENIED.

2. That this case is hereby REMANDED to the Secretary of Health and Human Services for further proceedings in accordance with this Memorandum and Order, said administrative proceedings to be completed within 180 days of this Order.

3. That the Clerk is instructed to mail a copy of this Memorandum and Order to counsel for both parties.