**Grover HALL for Pamela D. HALL,
SSN: 228–21–0450, Plaintiff,**

v.

**Shirley S. CHATER,[1] Commissioner
of Social Security, Defendant.**

Civ. A. No. 94–0185–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Aug. 15, 1995.

1.  On March 31, 1995, the Social Security Administration became an independent agency, separating from the Department of Health and Human Services. Under section 106(d)(2) of the So-

John Heuser, Lebanon, VA, for plaintiff.

Julie M. Campbell, Asst. U.S. Atty., Roanoke, VA, for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

Plaintiff, Grover Hall, on behalf of his daughter, Pamela D. Hall, filed this action under 42 U.S.C. 1383(c)(3) and seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for child's supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. 42 U.S.C. 1381–1383d. Jurisdiction is pursuant to 42 U.S.C. 1383(c)(3).

In an opinion which now stands as the final decision of the Commissioner, an Administrative Law Judge ("ALJ") found that plaintiff is "capable of performing age/appropriate activities" and that her "impairments are not of a comparable severity that would disable an adult." Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act. *See* 42 U.S.C. § 1382c(a)(3). The Court finds substantial evidence to support this conclusion.

### I.

The claimant, Pamela Hall, was born on March 24, 1980, and was 14 years old at the time of the hearing in front of the ALJ. Pamela was in the eighth grade and attending classes regularly. She has never engaged in substantial gainful activity. In

cial Security Independence and Program Improvement Act, Pub.L. No. 103–296, 108 Stat. 1464, 1477, and Fed.R.Civ.P. 25(d)(1), Shirley S. Chater, Commissioner of Social Security, should be substituted for Donna E. Shalala, Secretary of Health and Human Services.

1985, the claimant was diagnosed as suffering from Legg–Calve–Perthes disease and had to wear a restrictive brace from 1985 to 1987. This brace prevented her from playing any childhood games that required physical exertion as well as walking any long distances. Even though the brace was removed in 1987, Pamela is still only required to do activities in her physical education class which she feels she can physically handle. Pamela says that she opts out of any running activities or sports. She states that her left leg is stiff when she wakes up in the morning or if she sits still for 45 minutes or more. She also says that her left leg gives way and she falls about once or twice a week. In addition, the claimant states that she has daily crying spells. Pamela admits that she is a compulsive eater with her weight around 175 pounds and her current height just over five feet.

After the brace was taken off her leg in March of 1987, her doctor reported excellent recovery from the disease and released the claimant to perform unlimited duties. More recently, on May 17, 1993, Dr. Ramon A. Motos conducted a consultative exam and reported that all tests on the claimant were negative in regard to the disease. Dr. Motos reported that Pamela had no abnormality of gait and station, no muscle atrophy or disuse, no evidence of shortening of the lower extremities, and no muscle spasm.

Dr. Charles Scharf, a psychiatrist, treated the claimant for childhood depression from July 13, 1991 through August 21, 1992. Dr. Scharf's notes from his last few months of treating the claimant state that she enjoys school and is looking forward to returning after summer break. He also stated that Pamela was enthusiastic, and her appetite and sleep were good.

Carolyn Barton, the claimant's eighth grade English teacher, filled out a "Questionnaire for Teachers" on March 15, 1994. Ms. Barton reported that Pamela goes to school full-time, responds well to adults, completes most tasks on schedule, has no problems with self-help skills and does not require special attention. Her teacher also said that Pamela is a shy student but appears to get along well with classmates. Ms. Barton did report that

Pamela is below average academically and has some difficulty in understanding and following instructions but tries to work independently, concentrate and pay attention. Ms. Barton stated that Pamela's obesity is her only significant difference from other students and attributes her introverted behavior to her weight problem. Pamela has never failed a grade and generally receives B's, C's and some D's in her course work.

A psychological evaluation was conducted on March 4, 1993 by Dr. L. Andrew Steward. Dr. Steward administered a Wechsler Intelligence Scale for Children—Revised Test in which Pamela had a full scale score of 104 which placed her in the 61st percentile for IQ scores and within the average range of intellectual abilities. In his notes, Dr. Steward stated that Pamela "is a somewhat heavy, attractive girl. She was appropriately talkative, and rapport was established easily." He also said Pamela tried diligently on the tests. Pamela told the doctor that she got along well with her family, was doing well in school, got along well with teachers and had a few friends at school. Pamela said she did not currently have a boyfriend, but she "is all right with not having one now." She also said she was in the youth choir at school and church and attends church regularly.

Dr. Steward found that Pamela daydreams frequently because she feels unappreciated and demeaned by others. He states that she is still depressed when she thinks of the days when she had to wear the leg brace and fears that those days may return. Dr. Steward conducted a Medical Assessment of Ability to do Work–Related Activities (Mental) ("Medical Assessment to do Work test") and opined that Pamela had "poor or no" ability to interact with supervisors, deal with work stresses, behave in an emotionally stable manner or understand, remember and carry out simple job instructions. Dr. Steward noted that Pamela's symptoms are consistent with post-traumatic stress syndrome.

## II.

■ This review is limited to a determination as to whether there is substantial evidence to support the Commissioner's final

decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642. *See Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

▮ Under 20 C.F.R. § 416.924, the Commissioner is required to evaluate a child's SSI claim under a four-step sequential process. The steps are as follows:

1. Whether the child is working;

2. Whether the child has a severe impairment;

3. Whether the child has an impairment or combination of impairments that meets or equals a listed impairment in Appendix 1;

and

4. Whether the child has an impairment or combination of impairments of comparable severity that would prevent an adult from engaging in substantial gainful activity.

20 C.F.R. § 416.924(c)–(f).[2] In the present case, the ALJ found plaintiff not disabled at the fourth step.

If a child does not have an impairment that meets or equals a listed impairment at step three, the Commissioner must then at step four perform "an individualized functional assessment to determine whether [the child has] an impairment or combination of impairments which would nevertheless be of compa-

rable severity to an impairment(s) that would disable an adult." 20 C.F.R. § 416.924a(a). For young adolescents from age twelve to age sixteen, the individualized functional assessment is made in terms of the following domains:

(1) Cognitive function, e.g., your ability to progress in applying the skills involved in reading, writing, and mathematics; your conceptual growth, reasoning and problem-solving abilities;

(2) Communicative function (includes speech and language), e.g., your ability to communicate pragmatically (i.e., to meet your needs) and to converse spontaneously and interactively, expressing complex thoughts with increasing vocabulary in all communication environments (e.g., home, classroom, playground, extra-curricular activities, job) and with all communication partners (e.g. parents or caregivers, siblings, peers, school classes, teachers, other authority figures);

(3) Motor function (includes gross and fine motor skills), e.g., your ability to engage in the physical activities involved in physical education, sports, and social events appropriate to your age;

(4) Social function, e.g., your ability to initiate and develop friendships, to relate appropriately to individual peers and adults and to peer and adult groups, and to reconcile conflicts between yourself and peers or family members or other adults outside your family;

(5) Personal/behavioral function, e.g., your ability to help yourself in taking care of your personal needs and safety; to respond appropriately to authority relationships and school rules; to manifest a sense of responsibility for yourself and respect for others; to adapt to your environment; and to learn new skills;

---

**2.** The Commissioner promulgated the four-step evaluation process after the Supreme Court in *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), found the former two-step evaluation "inconsistent with the statutory standard" which provides that a child is disabled if he/she has an impairment that is of "comparable severity" to an impairment which would ren-

der an adult disabled. *Id.* at 536, 110 S.Ct. at 894. Under the former scheme, a child could not be found disabled unless he/she had an impairment or combination of impairments which met or equaled an impairment listed in Appendix 1. The child did not receive any kind of individualized assessment.

(6) Concentration, persistence, and pace, e.g., your ability to engage in an activity, such as studying or practicing a sport, and to sustain the activity for a period of time and at a pace appropriate to your age. 20 C.F.R. § 416.924d(I)(1)–(6). Generally, under 20 C.F.R. § 416.924e(c)(2), the Commissioner will find a child disabled if the child is functioning at the "marked"[3] level in one domain and at the "moderate" level in another domain or is functioning at the "moderate" level in three domains. In the present case, the ALJ found that the claimant had no limitations in any of the domains except for a mild impairment in motor abilities.

■ The claimant contends that the Commissioner's final decision is not supported by substantial evidence because the ALJ did not utilize a vocational expert. The claimant relies on the line of cases which establish that if a claimant has nonexertional impairments[4] that affect the ability to perform work, the Commissioner must utilize a vocational expert to show alternative jobs in the economy which the claimant can perform. *Hall v. Harris,* 658 F.2d 260, 265 (4th Cir.1981); *Grant v. Schweiker,* 699 F.2d 189 (4th Cir. 1983).

The Court agrees that this is the correct procedure for an adult claimant because the Commissioner must at the fifth step of the sequential process determine whether an adult claimant has the residual functional capacity to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f). However, at the last step of the sequential process for evaluating a child's disability claim, the Commissioner must perform "an individualized functional assessment." 20 C.F.R.

§ 416.924a(a). In making this assessment, the Commissioner must consider a child's impairment, age, ability to be tested, ability to perform age-appropriate activities, and other such relevant factors. 20 C.F.R. § 416.924a(a). "Age-appropriate activities ... is a comprehensive term that refers to what a child is expected to be able to do given his or her age." 20 C.F.R. § 416.924a(c).

In *Zebley,* when the Court rejected the listings-only approach for evaluating a child's disability claim, the Court recognized the difference between a "vocational analysis" which is used for adults and a "functional analysis" which is appropriate for children. *Zebley,* 493 U.S. at 539–40, 110 S.Ct. at 896.

> *The fact that a "vocational" analysis is inapplicable to children* does not mean that a "functional" analysis cannot be applied to them. An inquiry into the impact of an impairment on the normal daily activities of a child ...—speaking, walking, washing, dressing, and feeding oneself, going to school, playing, etc.—is, in our view, no more amorphous or unmanageable than an inquiry into the impact of an adult's impairment on his ability to perform "any other kind of substantial gainful work which exists in the national economy," § 1382c(a)(3)(B).

*Id.* (emphasis added).

Thus the Court concludes that a "vocational analysis" and the use of a vocational expert in a child's disability case is neither appropriate nor required.[5] The last step in evaluating an adult's claim focuses on whether the claimant, considering age, education, and previous work experience, can perform

---

3. "Where 'marked' is used as a standard for measuring the degree of limitation it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis. When standardized tests are used as the measure of functional parameters, a valid score that is two standard deviations below the norm for the test will be considered a marked restriction." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 112.00(C).

4. By addressing Plaintiff's argument about a vocational expert, the court does not mean to imply that Plaintiff, in fact, has nonexertional impairments.

5. *E.g., Anderson v. Shalala,* No. 93–273, slip op., 1994 WL 511396 (N.D.Ala. August 25, 1994) (no need for vocational expert testimony in a child benefit's claim); *Estep v. Sec. of HHS,* No. 93–P–1991–W, slip op., 1994 WL 722838 (E.D.Ky. May 27, 1994) (do not need vocational expert in child claim).

other jobs. 20 C.F.R. §§ 404.1520(f) and 416.920(f). This analysis obviously requires evidence, either through the Medical Vocational Guidelines in Appendix 2 of 20 C.F.R., Pt. 404, Subpt. P, or from a vocational expert, concerning the exertional and/or nonexertional requirements of jobs and the availability of such jobs. The final step for evaluating a child's claim, however, focuses on whether the child can perform age-appropriate activities, not jobs. A vocational expert's testimony would have no relevance to such an inquiry. If the adult cannot perform other jobs in the economy, he/she will be found disabled. 20 C.F.R. §§ 404.1520(f) and 416.920(f). "Where an individualized functional assessment shows the child to be, in relation to an adult, comparably restricted in his or her ability to engage in normal daily activities for his age, such as communicating, walking and dressing, the child will be found disabled." *Cummings v. Sullivan*, No. 89–379, 1990 WL 109832, at *5 (D.N.J. July 31, 1990).

■ In addition, the Claimant contends that the ALJ erred in disregarding the psychological evaluation of Dr. Steward since there was no contradictory evidence in the record to refute the doctor's findings. The ALJ found that the claimant had been treated for childhood depression in 1992 but improved and did not receive any more treatment and, therefore, it was not a disabling impairment. The ALJ did not give great weight to Dr. Stewards's report for several reasons, which were: (1) Dr. Steward administered a Medical Assessment to do Work test which is inappropriate for determining whether a child is disabled; (2) Dr. Steward's analysis was internally inconsistent, and (3) other evidence contradicted Dr. Steward's reports. This Court finds substantial evidence to support the ALJ's findings.

The ALJ was correct in not giving great weight to Dr. Steward's evaluation of the claimant's Medical Assessment to do Work test. For similar reasons that a vocational expert is not used in a child's claim, a Medi-

cal Assessment to do Work test is irrelevant in a child's claim because it is only appropriate for determining an adult's ability to do work related activities. A Medical Assessment to do Work test is used for vocational analysis in adult claims, and as the Supreme Court stated in *Zebley*, a "vocational analysis is inapplicable to children." 493 U.S. at 539, 110 S.Ct. at 896. This test determines an "individual's ability to do work-related activities on a day-to-day basis in a regular work setting," (R. at 187), and does not contain the relevant child analysis which is an "inquiry into the impact of an impairment on the normal daily activities of a child [such as] speaking, walking, washing, dressing, and feeding oneself, going to school, playing, etc." *Zebley*, 493 U.S. at 540, 110 S.Ct. at 896. Thus, since Pamela is only 14 years old, a Medical Assessment to do Work test is not appropriate for her claim and any findings from the test should not be given great weight.[6]

Even if the test was somehow appropriate for a child's claim, Dr. Steward's findings on the test regarding Pamela conflict with his own notes. Dr. Steward says Pamela has "poor or no" ability to interact with supervisors, deal with work stresses, behave in an emotionally stable manner or understand, remember and carry out simple job instructions. However, in his report, he notes that she does "pretty good in most subjects" and received all B's and one C on her last report card. He states that she gets along well with teachers and classmates at school. Pamela told Dr. Steward that she had a boyfriend last year, but currently she did not and that was "all right" with her. Dr. Steward noted that she was adequately dressed and groomed the day of the evaluation and tried "diligently" on the test. Dr. Steward also noted that she is a member of both the school and church youth choir as well as a regular church attendee. These observations and findings by Dr. Steward in his report are not consistent with someone who has no ability to act emotionally stable or interact with supervisors (e.g. teachers) or handle stress

---

**6.** This Court's holding is not to say that a questionnaire or test cannot be developed that would be applicable in a child's claim if the test's focus was on child-related activities. However, the Medical Assessment to do Work test used in this case focuses entirely upon a vocational analysis which is not appropriate in a child's claim.

or carry out simple instructions. If Pamela truly had little or no ability to do any of these activities then it does not seem logical that she would be doing well in school, participating in the youth choir, and getting along fine with teachers, family and friends.

Likewise, other evidence in the record does not support Dr. Steward's findings. In the last visit that Pamela had with Dr. Scharf, he stated that she was improving, looking forward to school, and had more enthusiasm. That last visit with Dr. Scharf was in August of 1992 and Pamela has not returned for any further treatment. Also, Pamela's eighth grade English teacher reported that Pamela was doing fine in school and had no special problems or differences from fellow students other than her obesity. Her teacher stated that Pamela "responds well to adults overseeing her behavior" and she "has some difficulty in understanding and following instructions, but she does try to work independently, concentrate and pay attention." Furthermore, her teacher said Pamela "completes most tasks on schedule" and "appears to get along well with classmates." This teacher evaluation directly contradicts Dr. Steward's findings in his Medical Assessment to do Work test. However, it is not necessary in this case to show contradictory evidence to refute the Medical Assessment to do Work test because the test is inappropriate for a child's disability claim.

## IV.

Having found substantial evidence, the Commissioner's final decision must be affirmed. *Laws*, 368 F.2d at 642. An appropriate judgment and order will be entered this day.