Charles Daniel SMITH, Appellant,

v.

Richard S. SCHWEIKER, in his official capacity as Secretary of the Department of Health and Human Services, Appellee.

No. 83–1014.

United States Court of Appeals,
Fourth Circuit.

Argued May 12, 1983.

Decided Jan. 24, 1984.*

Elizabeth Renuart, Legal Aid Bureau, Inc., Frederick, Md., for appellant.

Robert G. Melvin, Jr., Social Security Division, Dept. of Health and Human Services, Baltimore, Md. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., J. Frederick Motz, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before RUSSELL, PHILLIPS and MURNAGHAN, Circuit Judges.

PER CURIAM:

The question presented is whether, consistent with our recent decision in *Grant v. Schweiker*, 699 F.2d 189 (4th Cir.1983), the Secretary properly applied the "grid regulations" to deny Social Security disability benefits to claimant Charles Smith, where Smith introduced evidence that he suffered

* Original opinion of October 18, 1983 has been withdrawn and a modified opinion filed January 24, 1984 substituted.

from anxiety and depression in addition to his physical ailments. Because there is substantial evidence to support the finding that Smith's nonexertional maladies did not significantly affect his ability to perform work of which he was exertionally capable, we affirm the district court order affirming the Secretary's denial of benefits based upon a straightforward application of the grids.

## I

Smith's claim for disability benefits was heard by an administration law judge (ALJ) in May 1980, after the Social Security Administration (SSA) had denied his claim. The uncontroverted evidence introduced at the hearing indicated that Smith suffers from numerous physical infirmities, the primary one being progressive deterioration of his left hip joint which causes him pain in walking for any distance and prevents his stooping or lifting heavy objects. Smith also testified he was in constant and severe pain due to his hip condition, though the ALJ found this lacking in credibility because not substantiated by the medical evidence.

The other prong of evidence, more critically at issue on this appeal, was a psychiatric examination of Smith performed for the SSA by a Dr. Niklewski. As summarized by the ALJ, Dr. Niklewski's report was that

[Smith's] conversation was coherent and relevant and his mental activity was alert and his orientation was good. His intellectual function showed no deficits in memory or other aspects of performance. His mood appeared to be mildly depressed and his affect was anxious, as reflected in his tense manner of speech, voluble recitation of physical symptoms and a slight tremor. He displayed no evidence of psychosis such as delusions, ideas of reference, or paranoid ideation. The diagnosis was anxiety neurosis.... From an emotional standpoint, he suffers from a good deal of tension and anxiety as well as depression. He has not received specific treatment for his emotional state which does not appear to produce significant

social, personal, or occupational regression in itself. However, combined with the physical symptoms, it would appear that his anxiety has an additive effect. It was the [doctor's] opinion that from a strictly emotional viewpoint, [Smith] does not have a mental impairment so severe that he is unable to engage in substantial gainful activity but "that his disability should be determined strongly on a physical basis in combination with the added stress of his anxiety."

The ALJ's determination, later adopted by the Secretary, that Smith was not "disabled" within the meaning of the Act, see 42 U.S.C. § 423(d)(1)(A), flowed from a straightforward application of the "grid regulations," see generally Heckler v. Campbell, —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Because the ALJ concluded, as a matter of fact, that Smith retained the residual capacity to engage in sedentary work, he found Rule 201.19, 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1, dispositive of the claim. The ALJ considered the grids controlling, notwithstanding the evidence of Smith's psychological difficulties, based upon a factual determination that Smith's anxiety neurosis would not prevent his engaging in sedentary work.[1]

After the district court found the Secretary's denial of benefits to be supported by substantial evidence, Smith noticed the instant appeal.

## II

If Smith's ailing hip, associated physical ailments, and related pain were the only evidence of disability presented to the Secretary, we think it plain that the denial of benefits based upon a straightforward application of the grid regulations would be supported by substantial evidence. The record reflects that Smith is ambulatory without cane or crutches, that he can stand for brief intervals and can sit for longer periods, and that he retains full strength and maneuverability in his upper body. This clearly suffices as support for the Secretary's determination that Smith has the residual capacity to engage in sedentary

---

1. Specifically, the ALJ held: "claimant's intellectual functions [are] not impaired and ... he [is] not suffering from emotional symptoms that would result in significant social, personal or occupational regression ... [and this] clear-

ly rule[s] out the possibility that the claimant suffers from a psychiatric problem which would prevent him from engaging in sedentary types of employment."

work, and for the ultimate finding of "not disabled" based upon application of the grids.[2]

The potential wrinkle in this case arises because Smith introduced evidence of anxiety neurosis and depression additional to his physical maladies. The crux of Smith's argument on appeal is that, because he suffers from "nonexertional impairments" in combination with his exertional impairments, the grid regulations cannot be controlling, but instead the Secretary must prove by specific vocational evidence that Smith can perform jobs in the national economy. This presents for decision the very narrow issue of whether, once Smith made out a prima facie case of disability, *see Hall v. Harris,* 658 F.2d 260, 264 (4th Cir.1981), the Secretary properly relied upon the grids notwithstanding the evidence of Smith's anxiety neurosis.

In *Grant v. Schweiker,* 699 F.2d 189 (4th Cir.1983), this court held recently that, where a claimant

> demonstrates the presence of nonexertional impairments, the Secretary, in order to prevail, must be required to prove by expert vocational testimony that, despite [the claimant's] combination of nonexertional and exertional impairments, specific jobs exist in the national economy which he can perform. The grids may satisfy the Secretary's burden of coming forward with evidence as to the availability of jobs the claimant can perform only where the claimant suffers solely from exertional impairments.

*Id.* at 192. We cannot agree with Smith that *Grant* controls here. Although *Grant* makes clear that reliance on the grids is precluded where the claimant suffers from a "nonexertional impairment," not every malady of a "nonexertional" nature rises to the level of a "nonexertional impairment." The proper inquiry, under *Grant,* is whether a given nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable. If the condition has that effect, it is properly viewed as a "nonexertional impairment," thereby precluding reliance on

the grids to determine a claimant's disability.

If a nonexertional condition reduces an individual's residual functional capacity to perform sedentary work, it is inappropriate to apply the grids because the range of jobs available to the impaired claimant is narrower than the grids would indicate. It is amply clear, however, that not all nonexertional conditions or limitations affect an individual's capacity to perform such work. Whether a given nonexertional condition affects a particular claimant's residual capacity to engage in certain job activities is a question of fact. *See Cummins v. Schweiker,* 670 F.2d 81, 84 (7th Cir.1982) (question whether nonexertional condition interfered with ability of claimant to perform sedentary work was factual). We conclude that substantial evidence supported the ALJ's finding that the anxiety neurosis complained of by Mr. Smith did not affect his capacity to perform sedentary work. Thus, it was not improper to apply the grids in determining Smith's disability status.[3]

This treatment of nonexertioanl conditions surely comports with the legislative intent underlying the enactment of the grid regulations. *See generally Heckler v. Campbell,* —— U.S. ——, 103 S.Ct. at 1957–58. We cannot believe the grids are formulated to reflect the availability of jobs in the national economy only for physically impaired claimants with "entirely normal" emotional and psychological makeups. If the grids are to serve their intended purpose, we think their use cannot be defeated by low-level personality and emotional disorders that undoubtedly afflict—at least from time to time—vast numbers of the populace. *See Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 537 (6th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

With this understanding, we hold that it was entirely proper for the Secretary to deny benefits to Smith based upon a routine application of the grid regulations.

*AFFIRMED.*

---

**2.** On appeal, Smith contends that the ALJ improperly discounted the evidence of Smith's pain in determining his capacity to engage in sedentary work. But we find substantial evidence in the record to support the ALJ's conclusion that Smith's pain—though severe when he engages in weight-bearing activities—would not preclude sedentary work.

**3.** A claimant's disability is of course established if his nonexertional condition is a "listed impairment" in the Regulations. *See generally* 20 C.F.R. Part 404, Subpart P, Appendix 1. In such a case it is unnecessary to resort to the grids. Smith rightly concedes that his anxiety and depression, even if proven, do not rise to the level of an "impairment" listed in the Regulations.