60 F.3d 821
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Stanley E. DAVIS, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 93-2117.
 United States Court of Appeals, Fourth Circuit.
 Argued May 5, 1995.
Decided July 6, 1995.
 
 ARGUED: Bob Warren, Black Mountain, NC, for Appellant. Clifford Carson Marshall, Jr., Asst. U.S. Atty., Asheville, NC, for Appellee. ON BRIEF: Jerry W. Miller, U.S. Atty., Asheville, NC, for appellee.
 Before HALL, WILKINS and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Stanley E. Davis appeals an order of the magistrate, sitting by consent, affirming the denial of Davis' claim for social security disability benefits. We remand the claim for reconsideration.
 
 I.
 A.
 
 2
 Stanley Davis filed a claim for social security disability benefits in 1990. He has not engaged in substantial gainful activity since 1977. He received disability benefits beginning in 1977, but these benefits were discontinued in 1980, after he failed to respond to a reevaluation of his claim by the Secretary of Health and Human Services. He last met the earnings requirements for disability benefits on March 31, 1984. The period during which Davis must prove onset of disability in this case is therefore from the termination of his prior award (August 1, 1980) through March 31, 1984. He was 48 years old as of the latter date.
 
 
 3
 Davis has suffered from diabetes since 1972, which he controls with oral medication, though he has blurred vision and some dizziness. In 1973, he was involved in a serious car accident. He fractured his pelvis, left knee, and jaw, and dislocated his hip. The knee fracture was surgically repaired with a pin and screw. His left leg is now slightly shorter than the right.
 
 
 4
 Lumbar disc problems followed. Davis had a laminectomy in 1975, and a laminotomy with removal of some disc material in 1978. Back, knee, and leg pain persisted, though, and led to depression. In 1979, Dr. John D. Patton diagnosed a major affective disorder with a "very real possibility ... for suicide," but, the next year, Dr. R. Edward Huffman found no primary psychiatric disease. According to Dr. Huffman, Davis' depression was "an expectable affective response to chronic pain." On the other hand, though Dr. Huffman diagnosed Davis' depression as an affective "response" rather than a "disorder," he stated that he had "no specific reason to doubt" Davis' assertion that "his pain greatly constricts his life."
 
 
 5
 From March 12 through 31, 1980, Davis was in the hospital suffering from knee pain and depression. He was given antipsychotic (Haldol) and antidepressant (Elavil) medication during this hospital stay, and he has taken Elavil ever since. There is no further psychiatric evidence.
 
 
 6
 From 1980 through 1987, Davis' treating physician was Dr. Hubert Clapp. When Dr. Clapp retired, Davis went back to see an orthopedic surgeon, Dr. David L. Jarrett, whom he had visited briefly (and fatefully for this case) in 1980. Dr. Clapp has since died, and Davis was unable to find his records. Hence, the medical record is silent from 1980 through 1987.
 
 
 7
 In his 1987 notes, Dr. Jarrett states that he did advise Davis to try to work as he can, but that "he is going to have some pain off and on and that there will be no program or surgery that is going to completely relieve all of his pain."
 
 
 8
 Davis' current treating physician is Dr. John J. Kelly. His records contain a 1989 notation, "In [Dr. Kelly]'s opinion, p[atien]t is 100% medically disabled [on account of] back pain, leg pain & muscle spasm."
 
 B.
 
 9
 Davis' claim was denied initially and on reconsideration. He requested a hearing. An administrative law judge (ALJ) found him capable of performing the full range of sedentary work and used the Medical-Vocational Guidelines[1] (the "grids") to deny the claim. The Appeals Council affirmed. Davis brought suit in district court, and the magistrate, sitting by consent pursuant to 28 U.S.C. Sec. 636(c), affirmed the denial. Davis appeals.
 
 II.
 
 10
 The final decision of the Commissioner must be affirmed if it is in accordance with law and is supported by substantial evidence. 42 U.S.C. Sec. 405(g); Hays v. Sullivan, 907 F.2d 1453 (4th Cir.1990). This case was decided at the final step of the sequential evaluation process--whether, notwithstanding the claimant's inability to return to his past relevant work, he is nonetheless able to perform other work available in the national economy. The burden of proof at this step is on the Commissioner. If the claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level, the Commissioner may rely on the grids to satisfy her burden of proof. Otherwise, the testimony of a vocational expert is essential. Walker v. Bowen, 889 F.2d 47 (4th Cir.1989); Wilson v. Heckler, 743 F.2d 218 (4th Cir.1984); Smith v. Schweiker, 719 F.2d 723 (4th Cir.1983). See 20 C.F.R. Sec. 1569a(c)(2), (d) (1994).
 
 
 11
 Pain is generally a non-exertional malady, Wilson, 743 F.2d at 222, but if it manifests itself only upon exertion and is consequently taken into account in the assessment of the claimant's strength, the grids can suffice to shoulder the Commissioner's burden. Walker, 889 F.2d at 49.
 
 
 12
 The ALJ did find that Davis' residual functional capacity was not reduced by any nonexertional factors. The question, therefore, narrows to whether this finding is supported by substantial evidence.
 
 
 13
 We do not think that it is. Nearly every piece of evidence in the record describes Davis as suffering from pain and depression caused by chronic pain.[2] He has been taking prescription painkillers[3] and antidepressants for over fifteen years. The ALJ seized on a single part of Dr. Jarrett's 1980 report to minimize the amount of nonexertional pain Davis feels. According to the ALJ,
 
 
 14
 [My] conclusion is supported by the statements of the claimant to Dr. Jarrett in 1980 that he did not have pain when he was sitting and not walking. This is also supported by the conclusion of Dr. Jarrett in 1980 that the claimant had increased pain with weight bearing.
 
 
 15
 Dr. Jarrett's report is more specific, and makes it clear that it is Davis' knee pain that is primarily exertional:
 
 
 16
 The patient has had considerable difficulty and pain in this [left] knee since [1973], but states that lately his knee hurts much worse, and bothers him almost continuously. He localizes the pain in the area of the medial compartment and associates it with activity. He denies pain in the knee when he sits around and does not walk any.
 
 
 17
 To say that a person does not have knee pain when he is not walking any is a far cry from the ALJ's conclusion that Davis does not have pain when he is sitting. Moreover, even sedentary jobs require occasional standing and walking. 20 C.F.R. Sec. 404.1567(a) (1994).
 
 
 18
 There are other pertinent observations in Dr. Jarrett's 1980 report. On examination, he noted a "marked muscle spasm" in Davis' lower back. His diagnoses included "residual back pain" and "severe emotional problems," and his final recommendation, which contained the "weight bearing" statement relied on by the ALJ, lends the ALJ's conclusion little support:
 
 
 19
 It is my impression that this man's knee is limiting his activity, and that weight bearing does accen[t]uate his pain. It is also my impression that his back pain is genuine[.] I think he has a right arachnoiditis here.
 
 
 20
 Arachnoiditis is inflammation of the thin membrane that separates the outer (dura mater) and inner (pia mater) meninges. Dorland's Illustrated Medical Dictionary 125-126 (25th ed.1974). The relevance of the weight-bearing capacity of Davis' knee to this inflammation and its associated "genuine" pain is neither apparent to us nor explained by the ALJ.
 
 
 21
 Another problem with the ALJ's analysis is that he seems to elevate Davis' inability to produce the records of his deceased physician into a negative proof that he sought no treatment during that time. Davis cannot help it that Dr. Clapp died, and he almost certainly saw Dr. Clapp more than a few times during that period.[4] A disability report he filed with his claim states that he visited Dr. Clapp monthly. Dr. Huffman's 1980 report notes several prescriptions written by Dr. Clapp, and, seven years later, Dr. Jarrett reported, "He apparently has been on medication by Dr. Clapp, but Dr. Clapp has now retired."
 
 
 22
 The ALJ's decision does not mention Dr. Clapp at all. Instead, the ALJ states, "[a]fter he saw Dr. Jarrett in July 1980, the claimant did not see Dr. Jarrett again until 1987." In the district court, the magistrate took this finding--which, though its connotation is misleading, is literally true--and turned it into a finding that is almost surely false: [T]here is substantial evidence to support the ALJ's determination to afford little weight to plaintiff's testimony concerning pain. The record is undisputed that plaintiff, while allegedly experiencing debilitating pain, failed to return to his doctor for six years after 1980.
 
 
 23
 A claimant's failure to seek treatment does detract from the credibility of his subjective complaints of pain, but there is certainly not substantial evidence to support a finding that Davis did not seek treatment from 1980 to 1987. The ALJ may therefore have unjustifiably minimized the severity of Davis' pain.
 
 
 24
 Accordingly, we remand for the ALJ to reconsider whether Davis' back pain or depression rose to the level of a nonexertional impairment during the relevant time period, i.e., whether either condition prevented Davis from performing a full range of sedentary work. See Smith, 719 F.2d at 725. If the ALJ on remand finds that either condition rose to the level of a nonexertional impairment, then the ALJ must consider vocational expert testimony to determine whether jobs existed in the national economy that Davis could perform.
 
 REMANDED
 
 
 [1]
 20 C.F.R. Part 404, Subpart P, Appendix 2. The particular guideline applied here is Rule 201.21 of Table No. 1, which directs a finding of "not disabled" for a "younger individual" aged 45 to 49 who is limited to sedentary work, is a high school graduate, has skilled or semi-skilled work experience, and whose skills are not transferable
 
 
 [2]
 We think that there is little relevance in whether Davis' depression is an affective "disorder" (as found by Dr. Patton) or an affective "response" (as found by Dr. Huffman). The relevant question is whether the depression, whatever its etiology, limits his ability to engage in the full range of work of which he is exertionally capable. Smith, 719 F.2d at 725
 
 
 [3]
 Two of the numerous medications that have been prescribed for Davis by Drs. Clapp and Kelly are Talwin and Soma. Talwin is indicated for moderate to severe pain, Physician's Desk Reference ["PDR"] at 2119-2121 (48th ed.1994), and Soma as an adjunct to rest and physical therapy for acute, painful musculoskeletel conditions. PDR at 2480-2482
 
 
 [4]
 We note that our remand provides another opportunity to find Dr. Clapp's records. Inasmuch as those records cover the critical period in dispute, securing them would be the best assurance against an erroneous award or denial of benefits