**Donald PARSONS, Plaintiff,**

**v.**

**Kenneth S. APFEL, Commissioner of the Social Security Administration, Defendant.**

Civil No. CCB–99–1355.

United States District Court, D. Maryland.

June 6, 2000.

---

358

Robert R. Jenkins, Jenkins, Block & Associates, Baltimore, MD, for plaintiff.

Lynn A. Battaglia, U.S. Atty., Baltimore, MD, Allen F. Loucks, Office of U.S. Atty, Baltimore, MD, for defendant.

### MEMORANDUM

GESNER, United States Magistrate Judge.

### I. *Background*

Plaintiff, Donald Parsons, brought this action, pursuant to 42 U.S.C. § 405(g), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. Currently pending are Plaintiff's Motion for Summary Judgment, Defendant's Motion for Summary Judgment, and Plaintiff's Response to Defendant's Motion for Summary Judgment. (Paper Nos. 7, 10, and 11). These motions have been assigned to the undersigned on consent of the parties pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, this Court grants plaintiff's motion for summary judgment and remands this case to the Commissioner for further proceedings consistent with this Memorandum.

Mr. Parsons applied for disability insurance benefits on June 22, 1995 alleging an inability to work since May 2, 1995 due to heart problems. (Record ("R") 40, 74). The Social Security Administration denied his application initially and upon reconsideration. (R. 54–56, 68–69). An Administrative Law Judge ("ALJ") held a hearing on April 23, 1997 at which Mr. Parsons was represented by counsel. (R. 19–39). On June 11, 1997, the ALJ issued a decision finding Mr. Parsons not disabled. (R. 7–13). On April 15, 1999, the Appeals Council denied Mr. Parsons' request for review making the decision of the Commissioner final and reviewable. (R. 3–5).

### II. *Standard of Review*

The role of this Court on review is to determine whether substantial evidence supports the ALJ's decision and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g) (1991); *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). This Court cannot try the case *de novo* or resolve evidentiary conflicts but rather must affirm a decision supported by substantial evidence. *Hays,* 907 F.2d at 1456. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Teague v. Califano,* 560 F.2d 615, 618 (4th Cir.1977). It is more than a scintilla but less than a preponderance of the evidence presented. *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir.1984). It is such evidence sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays,* 907 F.2d at 1456. In review-

ing for substantial evidence, the Court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the agency. *Id.*

This Court must also determine whether the ALJ properly applied the law. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987).

In determining whether one is disabled, the Commissioner has promulgated regulations that set forth a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520. This five-step process, described by the Supreme Court in *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), begins with the ALJ determining whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 *et seq.* If the claimant is engaged in a substantial gainful activity, the claimant is considered not disabled. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the claimant is not engaged in a substantial gainful activity, the ALJ, at the second step, examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920.

If the durational and severity requirements are met, the ALJ's analysis proceeds to a third step—a consideration of whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is known as the Listing of Impairments

("Listing"). If one of the Listings is met, disability will be automatically found without consideration of age, education, or work experience. If a Listing is not met, however, the ALJ then moves to a fourth step and considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. If the ALJ finds that a claimant does retain the RFC to perform past relevant work, then the claimant will be found to be not disabled.

If a determination is made that the claimant is not capable of performing past relevant work, the ALJ moves to a fifth and final step and considers whether, based upon the claimant's RFC, age, education, and past work experience, the claimant is capable of some other work. The burden shifts to the Commissioner at this step. *Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir.1995). If the claimant suffers solely from exertional impairments,[1] the Medical–Vocational Guidelines, as defined in part 404, Subpart P, Appendix 2 (the "Guidelines"), provide rules to be applied in determining whether a claimant is disabled. *Gory v. Schweiker,* 712 F.2d 929, 930 (4th Cir.1983). An ALJ, in applying the Guidelines, will examine the claimant's age, education, work experience, and residual functional capacity ("RFC") to determine which rule applies. *Gordon v. Schweiker,* 725 F.2d 231, 235 (4th Cir. 1984). The rule will direct a conclusion as to whether a claimant is disabled. *Gory,* 712 F.2d at 930.

The Guidelines, however, will not be used when the claimant suffers from both exertional and nonexertional impairments. *Smith v. Schweiker,* 719 F.2d 723, 725 (4th Cir.1984). In such a case, the ALJ is

---

**1.** Impairments may be exertional and nonexertional. An exertional impairment is one that affects the claimant's ability to meet the strength demands of certain jobs. 20 C.F.R. §§ 404.1569a and 416.969a. A nonexertional impairment is a "limitation that is present whether a claimant is attempting to perform the physical requirements of the job or not." *Gory v. Schweiker,* 712 F.2d 929, 930 (4th

Cir.1983). "[W]here the claimant's impairment is nonexertional—not manifested by a loss of strength or other physical abilities—or is marked by a combination of exertional and nonexertional impairments, the [Guidelines'] Rules are not conclusive, and full individualized consideration must be given to all relevant facts of the case." *Grant v. Schweiker,* 699 F.2d 189, 192 (4th Cir.1983).

required to employ the use of a vocational expert to determine whether the claimant is still capable of some work. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). If the claimant is not capable, disability will be found.

### III. *ALJ's Decision*

The ALJ evaluated Mr. Parsons' claim for disability insurance benefits using the above-described, five-step sequential process set forth in 20 C.F.R. § 404.1520. At the first step, the ALJ determined that Mr. Parsons had not engaged in substantial gainful activity since May 1995. (R. 13). At step two, the ALJ determined that Mr. Parsons' cardiac disease was a qualifying "severe impairment." (R. 10–11, 13). Progressing to step three, the ALJ found that the cardiac disease which he had identified as "severe" at step two did not meet or equal any listing in the Listing of Impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 13). At step four, the ALJ found that Mr. Parsons retained the RFC to perform his past relevant work as a salesman and consultant. (R. 12–13). Thus, he found Mr. Parsons not disabled. (*Id.*).

### IV. *Summary of Evidence*

Mr. Parsons was sixty years old at the time of the hearing.[2] (R. 21–22). He completed the tenth grade, served in the army for two years, and then worked from 1971 until May 1995 as a traveling sales representative. (R. 22–23, 78). According to Mr. Parsons, his May 1995 retirement was prompted by heart problems. (R. 74).

Mr. Parsons' heart problems first became apparent in March 1983 when he suffered a heart attack and was hospitalized. (R. 203). He was diagnosed with several heart problems including heart disease and ventricular tachycardia[3] and was transferred to Johns Hopkins Hospital for further treatment in May 1983. (R. 203). Doctors at Johns Hopkins started Mr. Parsons on an experimental antiarrhythmia[4] drug called Propafenone. (R. 203). In August 1983, Mr. Parsons underwent coronary artery bypass surgery and surgery to implant a defibrillator.[5] (R. 204). Mr. Parsons recovered from the surgery and was discharged from Johns Hopkins on September 2, 1983. (R. 214–15, 242). After his discharge, he continued on a regimen of medications including Propafenone. (R. 214–15).

From 1984 to 1990, the treatment notes of Mr. Parsons' doctors reflect that his heart disease and arrhythmia remained fairly stable. (R. 147, 151, 153, 155, 159, 164, 166, 169, 173, 189, 192, 195, 202, 205, 206, 208–09). In late 1990, Mr. Parsons began complaining of exertional fatigue, and doctors at Johns Hopkins discovered that he was in atrial fibrillation.[6] (R. 145, 147). In response to this finding, doctors replaced Mr. Parsons' defibrillator, prescribed an anti-coagulant medication for him, and increased the dosage of his Propafenone to regulate his heart rhythm. (R. 145). Thereafter, Mr. Parsons' heart condition again stabilized. (R. 95, 102, 104, 117, 123, 125). When tests revealed that his defibrillator had stopped working,

2. In the ALJ's written opinion, Mr. Parsons was incorrectly described as fifty-eight years old. (R. 10).

3. Ventricular tachycardia is defined as an abnormally rapid ventricular rhythm. *Dorland's Medical Dictionary* 1655 (28th ed.1994).

4. Arrhythmia is defined as "any variation from the normal rhythm of the heartbeat; it may be an abnormality of either the rate, regularity, or site of impulse origin or the sequence of activation. The term encompass-

es abnormal regular and irregular rhythms as well as loss of rhythm." *Dorland's Medical Dictionary* 121 (28th ed.1994).

5. A defibrillator is a device which "delivers a direct-current shock which restores normal rhythm to the heart." *Dorland's Medical Dictionary* 269 (28th ed.1994).

6. Atrial fibrillation occurs when the atria (upper chambers of the heart) quiver continuously in a chaotic pattern, causing a totally irregular, often rapid ventricular rate. *Dorland's Medical Dictionary* 625 (28th ed.1994).

Mr. Parsons declined to undergo the major surgery required to have a new one installed. (R. 104).

In late June 1996, Mr. Parsons again experienced atrial fibrillation, and in July 1996 he was hospitalized for an arterial blood clot and claudication in his legs.[7] (R. 259, 276). To treat the blot clot and relieve the claudication, Dr. Keleman, Mr. Parsons' treating physician, prescribed a six week course of anti-coagulant drug therapy and advised that he might need angioplasty[8] to relieve the blockages in his leg arteries. (R. 259–60). In September 1996, Mr. Parsons underwent angioplasty and additional surgery to improve the circulation in the arteries in his legs. (R. 265, 274, 276–77). By October 22, 1996, Dr. Keleman reported that Mr. Parsons was doing well, not experiencing claudication, and was walking the golf course without difficulty. (R. 266). Dr. Keleman also described Mr. Parsons as "completely asymptomatic." (*Id.*).

The most recent medical evidence of record concerning Mr. Parsons' heart condition consists of a treatment note by Dr. Keleman's dated June 1997. (R. 289–90). Dr. Keleman wrote that Mr. Parsons "has been feeling well" and "is able to walk" despite his extensive vascular disease and heart problems. (*Id.*). Dr. Keleman also wrote that he strongly believed that Mr. Parsons was unable to do moderate to heavy labor but advised him to walk to improve his cardiovascular health. (R. 290).

At the hearing, Mr. Parsons testified about how he struggled to work as a salesman after his heart attack in 1983. (R. 23–30). Mr. Parsons testified that his sales job involved selling men's and women's clothing to department and specialty stores throughout the mid-Atlantic region on behalf of various manufacturers. (R. 23–24). He testified that after his heart attack, he could no longer do the necessary lifting and carrying of heavy garment bags and driving that the job required. (R. 24–26). In order to continue working, Mr. Parsons testified that he was forced to enlist the help of friends and family and rely, at times, on the goodwill of his customers. (R. 25–29). According to Mr. Parsons, he first hired a friend to visit his customers. (R. 25). After approximately one year, this arrangement ended, and Mr. Parsons' wife began assisting him by driving him to his sales. She helped until she became ill with terminal breast cancer. (R. 26). According to Mr. Parsons, during the time that his wife drove him to sales calls, his customers "were very nice" and "would have somebody come from the store and assist" with bringing the garment bags inside. (*Id.*). Mr. Parsons testified that he eventually trained his son-in-law to give the sales presentations and helped him to establish relationships with his existing customers before retiring in 1995. (R. 26–29).

## V. *Analysis*

### A. *The ALJ's Decision that Mr. Parsons Can Perform His Past Relevant Work Is Not Supported by Substantial Evidence.*

Mr. Parsons maintains that the ALJ's reliance on the exertional classification assigned to his past relevant work in the Dictionary of Occupational Titles[9] ("DOT" or "Dictionary") was unfair and result-oriented. (Paper No. 7 at 6–7). Mr. Parsons argues that the ALJ should have referenced a specific DOT job number or even a page number. (*Id.* at 6). Mr. Parsons maintains that his failure to do so was "suspicious" and done to "effectuat[e]

---

**7.** Claudication is a symptom of arterial blockage. *The Merck Manual* 1785 (17th ed.1999). Claudication causes pain, ache, cramps or a tired feeling upon walking, most commonly in the calf but also in the foot, thigh, hip, or buttocks. *Id.*

**8.** Angioplasty is a procedure for eliminating areas of narrowing in blood vessels. *Dorland's Medical Dictionary* 80 (28th ed.1994).

**9.** The Dictionary of Occupational Titles is published by the Department of Labor.

an unfair decision simply by invoking the name of the D.O.T." to find that his past relevant work was light work, thereby avoiding the necessity to proceed to step five of the sequential evaluation process at which the Commissioner bears the burden of proof. (*Id.*). For the reasons discussed below, this Court finds that the ALJ's decision at step four is not supported by substantial evidence.

■ At step four of the sequential analysis, the claimant must show an inability to return to his or her previous work (*i.e.* occupation) and not simply to his or her specific prior job. *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir.1983). In determining whether a claimant can perform his or her past relevant work (as opposed to his or her prior job), the ALJ "may rely on the general job categories of the Dictionary as presumptively applicable to a claimant's prior work. The same label, however, may be used in a variety of ways." *DeLoatche*, 715 F.2d at 151. Therefore, "[t]he claimant may overcome the presumption that the Secretary's generalization applies by demonstrating that her duties were not those envisaged by the framers of the ... category." *Id.*

■ Mr. Parsons testified that his work as a salesman involved driving from store to store to give sales presentations on behalf of various manufacturers in order to sell men's and women's clothing to store proprietors. (R. 23–24, 29–30). He testified that this job required frequent lifting of heavy garment bags full of sample clothing into and out of the stores for each presentation. (*Id.*). Mr. Parsons also described a series of patchwork solutions which he devised after his heart attack in order to continue making sales. (R. 24–29). He testified that his wife helped him for a time and also that he paid a friend and his son-in-law to do the sales presentations and traveling—the bulk of the sales-man job—while he simply stayed home and completed the related paperwork. (*Id.*). Mr. Parsons testified that this "consultant" arrangement was possible because he "knew a lot of people" and "leaned on them quite frankly." (R. 29).

The ALJ's written decision implies, though does not expressly state, that Mr. Parsons could not perform his specific past job as a "salesman" because the required lifting of heavy garment bags would exceed his RFC for light work.[10] (R. 12). The ALJ expressly stated that Mr. Parsons could perform his specific past job as a "consultant" because this job did not exceed his RFC for light work. (*Id.*). In addition, relying on the DOT, the ALJ also stated that Mr. Parsons could perform his past relevant work as both a "salesman" and "consultant" as these jobs are performed in the national economy. (R. 12). On these bases, the ALJ found at step four that Mr. Parsons was not disabled. (R. 12–13).

In reaching his step four decision, however, the ALJ did not provide any discussion of what he considered to be the pertinent duties of Mr. Parsons' past relevant work as a "salesman" and "consultant." This lack of analysis is particularly troublesome with respect to the so-called "consultant" work which Mr. Parsons did after he became incapable of performing the physical demands of the salesman job. Given Mr. Parsons' uncontradicted testimony that the so-called "consultant" job involved little more than completing paperwork for sales made to his existing base of customers, the Court is unconvinced that "consultant" is an apt title for this job for purposes of relying on the DOT. *See DeLoatche*, 715 F.2d at 151 (labeling claimant's work as that of "school social worker" does not prove that claimant was engaged in occupation which DOT labeled as "school social worker" and identified as

---

10. Mr. Parsons testified that his job regularly required him to lift garment bags weighing over forty pounds. (R. 24). Light work, as defined in 20 C.F.R. § 404.1567(b), involves

"lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."

sedentary). In addition, the Court is troubled by the ALJ's division of the sales and paperwork aspects of Mr. Parsons' past relevant work in reaching his step four decision. The record suggests that Mr. Parsons was only able to separate the sales and paperwork aspects of his work because he had built up goodwill with some of his clients and could call upon them to be "nice." The ALJ did not discuss the importance of this uncontradicted evidence.

The lack of discussion concerning Mr. Parsons' past relevant work in conjunction with the ALJ's vague reference to the DOT also fails to provide a basis for Mr. Parsons to challenge the ALJ's finding that he could perform his past relevant work. *See Wilson v. Califano,* 617 F.2d 1050, 1054 (4th Cir.1980)("[I]t is manifestly unfair for the ALJ to rely on assumptions and "facts" which the claimant cannot, without reading the ALJ's mind, test or rebut"). The Court, as well, has been denied a basis for meaningful review of the ALJ's unfavorable decision at step four.

In an attempt to address the ALJ's lack of specificity and discussion, the Commissioner's motion for summary judgment cites to several DOT job listings which he argues support the ALJ's decision with respect to his finding that Mr. Parsons retained the RFC to do the "salesman" and "consultant" work as it is performed in the national economy. (Paper No. 10 at 15). While these jobs correspond to the job titles of "salesman" and "consultant" in the ALJ's opinion, the Court refuses to assess whether these jobs are properly comparable to Mr. Parsons' past relevant work without the benefit of the ALJ's discussion on this point.

In short, the ALJ's generalized reliance on the DOT and lack of discussion of the nature of Mr. Parsons' past relevant work leads this Court to conclude that the ALJ's disability decision at step four is not supported by substantial evidence. Accordingly, on remand, in making his step four determination as to whether Mr. Parsons can perform his past relevant work, the ALJ should identify and describe Mr. Parsons' job duties for the positions which the ALJ labeled "salesman" and "consultant" in his written decision. If, on remand, the ALJ relies on the DOT as a vocational resource to find that Mr. Parsons' past relevant work as a "salesman" and/or "consultant" is light work as it is performed in the national economy, the ALJ should cite to, and discuss, the specific DOT jobs which he uses to support his decision by providing job titles and reference numbers.

**B. The ALJ Properly Evaluated the Opinion of Plaintiff's Treating Physician, Dr. Keleman.**

Mr. Parsons contends that the ALJ erred in rejecting the medical opinion of his treating physician, Dr. Keleman. (Paper No. 7 at 4). Specifically, Mr. Parsons alleges that the ALJ rejected Dr. Keleman's opinion without specifying the medical evidence he found to be contrary to Dr. Keleman's opinion and without citing the relevant regulation governing the weight to be given to medical opinions. (*Id.*). The Commissioner contends that Mr. Parsons failed to raise these arguments before the Appeals Council and thus is precluded from raising them before this Court. (Paper No. 10 at 7). The Commissioner also contends that even if Mr. Parsons' arguments regarding the weight given to Dr. Keleman's opinion were properly before the Court, the Court would find no error in the ALJ's consideration of Dr. Keleman's opinion. (*Id.* at 8).

**1. Administrative Exhaustion**

■ As a preliminary matter, although Mr. Parsons clearly failed to raise the issue regarding the weight given to Dr. Keleman's opinion before the Appeals Council,[11] the Court rejects the Commis-

---

11. The only errors alleged in the memorandum setting forth Mr. Parsons' reasons for

sioner's argument that Mr. Parsons' failure to do so should operate to preclude the Court from considering the merits of his contentions. The Supreme Court yesterday held that social security claimants who "exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Sims v. Apfel,* —— U.S. ——, 120 S.Ct. 2080, 2086, —— L.Ed.2d —— (2000). Accordingly, the Court will address the merits of Mr. Parsons' arguments concerning Dr. Keleman's opinion.

### 2. Dr. Keleman's Opinion

The record in this case contains several medical exhibits from Dr. Keleman, a cardiologist who has treated Mr. Parsons since 1985. Among these exhibits is a medical assessment form regarding Mr. Parsons' ability to do work-related activity which Dr. Keleman completed on April 4, 1997.[12] (R. 271–73). On the form, Dr. Keleman indicated that Mr. Parsons had numerous postural limitations and could not do any lifting or carrying and that his ability to stand and walk was affected by his cardiovascular impairments. (*Id.*). The ALJ concluded that Dr. Keleman's opinion "with regard to claimant's inabilities to perform all postural activities [was] clearly in error" and that, absent an active cardiac impairment as opposed to one in remission, the assessment was "not entitled to deference." (R. 11).

■ When evaluating any medical opinion, an ALJ is required to consider the factors listed in 20 C.F.R. § 404.1527. These factors include the examining relationship, the treatment relationship, the amount of evidence presented to support an opinion, consistency of the opinion with

the record as a whole, and the area of specialization of the physician rendering the opinion. 20 C.F.R. § 404.1527. The regulation also provides that a treating physician's opinion is controlling only if it is consistent with other substantial evidence and well supported by medically acceptable clinical and laboratory techniques. *Id.*; *see also Smith v. Schweiker,* 795 F.2d 343, 346 (4th Cir.1986)(treating physician's opinion "may be disregarded only if there is persuasive contradictory evidence").

■ A review of the ALJ's decision reveals that he considered the appropriate factors in weighing Dr. Keleman's opinion and that the ALJ's decision to disregard Dr. Keleman's opinion to the extent it was inconsistent with Mr. Parsons' ability to perform light work is supported by substantial evidence. While the Court agrees with plaintiff's point that the fact that Mr. Parsons plays golf cannot "render Dr. Keleman's opinion, expertise, and length of treatment relationship meaningless," (Paper No. 7 at 5), the ALJ discussed more than merely the impact of the inconsistency he perceived between Dr. Keleman's opinion and the fact that Mr. Parsons plays golf. The ALJ noted that despite Mr. Parsons' history of heart problems, "recent reports show that he [was] doing well and lack recent evidence of claudication." (R. 11). Specifically, the ALJ discussed a progress report prepared by Dr. Keleman on April 4, 1997, the same day as the medical assessment form, which describes Mr. Parsons' coronary artery disease as "asymptomatic" and his chronic congestive heart failure as "compensated."[13] (*Id.*). The ALJ also noted that Mr. Parsons was not taking Nitroglycerin or other medication for chest pains and that he generally felt well and lived an

---

requesting Appeals Council review involve the ALJ's finding that Mr. Parsons' past relevant work was exertionally light work.

**12.** In April 1996, Dr. Keleman completed a virtually identical assessment form on which he indicated the same limitations as on the 1997 form. (R. 90–92).

**13.** This progress note further states that Mr. Parsons was doing well and not experiencing claudication, shortness of breath or chest pain. (R. 269).

active life. (R. 11, 12). Lastly, the ALJ discussed the fact that Dr. Keleman's own therapeutic classification of Mr. Parsons, (Classification C, defined as "[p]atients with cardiac disease whose ordinary physical activity should be moderately restricted, and whose more strenuous efforts should be discontinued"), was inconsistent with the degree of limitation indicated in his assessments. (R. 12). Based on the foregoing, the Court rejects Mr. Parsons' contention that the ALJ erred in his evaluation of Dr. Keleman's opinion.

### VI. *Conclusion*

For the foregoing reasons, the plaintiff's motion for summary judgment will be granted, the defendant's motion for summary judgment will be denied, the Commissioner's decision denying benefits is reversed, and this case is remanded for further proceedings consistent with this Memorandum. A separate order shall issue.